**VIRGIN ISLANDS BAR ASSOCIATION By and Through Its ETHICS and GRIEVANCE COMMITTEE, ST. THOMAS/ST. JOHN SUBCOMMITTEE, Petitioner**

**v.**

**MONICA BOYD-RICHARDS, ESQ., Respondent**

Misc. Nos. 88/1994, 21/1995, 22/1996, 73/1996

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 14, 1999

JOSEPH BRUCE WM. ARELLANO, ESQ., *Chairman of the Ethics & Grievance Committee, Virgin Islands Bar Association*

MONICA BOYD-RICHARDS, ESQ., *Respondent, Pro Se*

HODGE, *Presiding Judge*

## I. Introduction

These consolidated matters involve the serious question of disbarment of an attorney from the practice of law in the U. S. Virgin Islands. They came on for Hearing on December 18, 1997 ("the dispositional hearing"). The Petitioner, the Virgin Islands Bar Association, acting by and through its Ethics & Grievance Committee for the District of St. Thomas and St. John (the "Committee") was represented by its Chairman, Joseph Bruce Wm. Arellano, Esquire. The Respondent, Monica Boyd Richards (the "Respondent") did not appear, nor was she represented by counsel. The Court directed notice of the hearing to Respondent at her last known address pursuant to Rule 303(j) of the Territorial Court Rules, since Respondent could not be found for service within the jurisdiction.[1]

Four (4) cases came on to be heard at the dispositional hearing on December 18, 1997. These consisted of Misc. Nos. 88/94 and 21/95, filed in 1994 and 1995 respectively, and Misc. Nos. 22/96 and 73/96, both filed in 1996. By Order dated August 20, 1996, this Court granted the Committee's unopposed motion to consolidate the four cases pursuant to Rule 42 of the Federal Rules of Civil Procedure on the basis that all four petitions concerned the same Respondent, and her fitness to continue the practice of law in this jurisdiction.

At the conclusion of the hearing, the Court entered its Findings of Fact and Conclusions of Law into the record, and ordered that the Respondent be disbarred. Due to the significance of such disbarment proceedings for the guidance of the bench and the Bar, the Court by this Memorandum reduces its decision to writing and sets forth the rationale for its decision.

---

[1] On June 3, 1997, the Court determined that Respondent was avoiding service of the notices in this matter, and the delivery of process in other matters pending before this Court. Accordingly, an order was entered wherein Respondent was required to report personally and sign an appearance log located in the Civil Division of the Territorial Court. The log reveals that Respondent never appeared.

## II. Petitions for Disciplinary Action

### A. Misc. No. 88/1994

On or about December 8, 1988, Octancia Theodore filed a grievance with the Committee against the Respondent, alleging that Respondent, who had represented Ms. Theodore, failed to file a petition for writ of review from an adverse administrative determination, but instead filed an original action in the District Court. Further, Ms. Theodore alleged that Respondent failed to oppose the motion for summary judgment which had been filed by the Defendant in the District Court case.

An evidentiary hearing was held on January 22, 1992 before a Panel of the Committee. Respondent and other witnesses appeared and testified, and documents were admitted into evidence.

Upon consideration of the testimony and the evidence presented, the Committee concluded that the Respondent failed to appeal the administrative decision and file a writ of review; and that Respondent failed to oppose the motion for summary judgment filed against Ms. Theodore by the Defendant in the District Court case in violation of the following Rules of the Disciplinary Rules of the Model Code:[2]

> *DR 6-101(A)(1), (2) and (3),* which require, inter alia, that a lawyer competently prepare and handle matters entrusted to him; and
>
> *DR 7-101(A)(1),* which requires, *inter alia,* that a lawyer not intentionally fail to seek the lawful objectives of a client; and
>
> *DR 7-101(A)(3),* which requires, *inter alia,* that a lawyer not prejudice or damage a client.

*See* the Committee's letter memorandum, containing its findings and conclusions, dated September 8, 1992. Further the Court found that the violations of the Disciplinary Rules were sufficiently egregious to require that a petition for disciplinary action seeking suspension be filed with this Court.

---

[2] Because this grievance predated the Order making the Model Rules applicable in the Virgin Islands, it was processed in accordance with the Model Code, the predecessor to the Model Rules.

## B. Misc. No. 22/96

On or about December 5, 1994, the Honorable Ive Arlington Swan, a judge of this Court, filed a grievance with the Committee against the Respondent, claiming that Respondent had been appointed to represent Kevin Connor in a criminal matter on September 12, 1994 and despite the Order of appointment, Respondent required Kevin Connor's mother, Cathilda Connor, to execute a retainer agreement retaining her.

An evidentiary hearing was held on August 26, 1995 before a three-attorney panel of the Committee, at which Judge Swan, Respondent, and various witnesses appeared, testified and were cross-examined, and at which documents were admitted into evidence. Upon consideration of the testimony and the evidence presented, the Committee unanimously found and concluded that the Respondent knew that she had been appointed by this Court to represent Kevin Connor at the time that she required Mrs. Connor to execute the retainer agreement, and that she accepted the $2,300 from Mrs. Connor. The Panel concluded that Richards had violated the following Rules of the Model Rules:

> *Rule 4.1(a)*, which prohibits, *inter alia*, a false statement of material fact or law to a third person; and
>
> *Rule 6.2*, which prohibits, *inter alia*, a lawyer from seeking to avoid a court appointment to represent a person, except for good cause; and
>
> *Rule 7.1(a)*, which prohibits, *inter alia*, a lawyer from making a false or misleading communication concerning his services; and
>
> *Rule 7.3(a)*, which prohibits, *inter alia*, in-person solicitation by a lawyer for the lawyer's pecuniary gain; and
>
> *Rule 8.4(c)*, which prohibits, *inter alia*, a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

*See* Committee's Findings of Fact and Violations, dated September 12, 1995, pp 4-6, attached as Exhibit "10" to the Committee's Petition for Disciplinary Action.

Further, the Panel unanimously concluded that Respondent's failure to disclose to Mrs. Connor that she had been appointed by the Court; Respondent's failure to advise Mrs. Connor that her services were therefore free of charge; Respondent's attempt to convert an appointed case into a fee-generating case; and Respondent's solicitation of Mrs. Connor, were sufficiently egregious to require that a petition for disciplinary action be filed with this Court with a recommendation for disbarment pursuant to Rule 8.1(b) of the ABA Standards for Imposing Lawyer Sanctions. *Id.*

## C. Misc. No. 73/1996

On or about November 14, 1994, Mr. Wendall Callwood, filed a grievance with the Committee against the Respondent, alleging that on August 8, 1994 he went to Respondent's' office to replace a check in the amount of Fifty Dollars ($50.00) which had been returned for insufficient funds. While at her office, Respondent had Mr. Callwood execute a retainer agreement, and Mr. Callwood gave her a post-dated check in the amount of Five Hundred Dollars ($500.00) to retain her services. Within a few days, Mr. Callwood changed his mind and telephoned Respondent, leaving messages for her asking her to return his Five Hundred Dollars ($500.00). Respondent did not return his calls, cashed the check, and failed to render any services to Mr. Callwood.

An evidentiary hearing was held on March 29, 1996, before a three-attorney Panel of the Committee, at which Mr. Callwood, Respondent, and various witnesses appeared and testified and were cross-examined, and at which documents were admitted into evidence.

Upon review of the testimony and consideration of all the evidence presented, the Committee unanimously found and concluded that Respondent failed to communicate with Mr. Callwood, or to return his calls regarding the return of his retainer check for the amount of Five Hundred Dollars ($500.00); that Respondent failed to advise Mr. Callwood that the retainer fee was "non-refundable"; that Respondent refused to return the retainer after a prompt demand for same by Mr. Callwood; and that Respondent solicited Mr. Callwood, which were in violation of the following Model Rules of Professional Conduct:

162

*Rule 1.4(a)*, which requires, *inter alia*, that a lawyer keep a client reasonably informed of the status of his matter; and

*Rule 1.5(a)*, which requires, *inter alia*, that a lawyer's fees be reasonable; and

*Rule 1.5(b)*, which requires, *inter alia*, that the basis or rate of a lawyer's fee be promptly communicated to the client; and

*Rule 1.16(a)(3)* and *Rule 1.16(d)*, which require, *inter alia*, that a lawyer promptly withdraw from representation, and refund all unearned fees, when discharged by the client; and

*Rule 7.3(a)*, which prohibits, *inter alia*, in-person solicitation by a lawyer for the lawyer's pecuniary gain.

*See* the Committee's Findings of Fact and Violations, dated April 30, 1996, pp. 2-3, attached as Exhibit "10" to the Committee's Petition for Disciplinary Action. Further, the Panel unanimously concluded that Respondent's violation of the Model Rules were sufficiently egregious to require that a petition for disciplinary action be filed with this Court with a recommendation for disbarment pursuant to Rule 8.1 of the ABA Standards for Imposing Lawyer Sanctions. *Id.*

### D. Discussion and Analysis

Pursuant to Territorial Court Rule 305(a), the Virgin Islands Bar Association was created "to assist the Court in regulating the practice of law in the territory". To this end, the Virgin Islands Bar Association has adopted By-laws, as published in Territorial Court Rule 305(f), which are used to enforce the rules. The By-laws establish the operational committees of the Virgin Islands Bar Association, including the Professional Ethics and Grievance Committee which is charged with recommending standards and methods of effective enforcement of the ethical conduct within the legal profession, pursuant to § 8(D)(1) of No. X. The Professional Ethics and Grievance Committee also has the authority to investigate all charges of professional misconduct that may be brought to its attention in writing or upon its own motion, pursuant to § 8(D)(3) of By-law No. X.

163

Pursuant to the aforesaid By-laws, the Professional Ethics and Grievance Committee, by its respective subcommittees, investigated the allegations of professional misconduct against Respondent which were brought by Octancia Theodore, Judge Ive Swan, and Wendall Callwood. After conducting hearings on all three (3) grievances, the Committee found that Respondent's conduct warranted disciplinary action and filed these petitions establishing probable cause for disciplinary action.

Pursuant to Territorial Court Rule 303(f)(3), the Court issued three orders requiring Respondent to show cause within thirty (30) days why she should not be disciplined. The orders were issued on May 31, 1999 in Misc. No. 88/94, and on April 3, 1997 in both Misc. No. 22/96 and Misc. No. 73/96. Respondent filed an Answer in Misc. No. 88/94 on June 30, 1995, opposing the petition and moving for a dismissal of the petition and sanctions against the Chairman of the Committee, Attorney Arellano. She also filed and Answer in Misc. Nos. 22/96 and 73/96, opposing the petitions for disciplinary action.

With respect to the motion to dismiss and for sanctions filed in Misc. No. 88/94, the Court notes that at the Status Conference held in this matter on July 10, 1995, Respondent took the position enumerated in the Answer that the District Court had overruled the Committee in its findings on the *Theodore* grievance, and dismissed that grievance against her. Essentially, Respondent's claimed that the *Theodore* matter was *res judicata*, and therefore, could not be relitigated before this Court. The Committee opposed her claim, and argued that the District Court had never ruled on the *Theodore* grievance. By Order dated July 24, 1995, the Court gave Richards ten (10) days to submit "documentation to support her contentions that Misc. No. 88/1994 should be dismissed on the basis of *res judicata*." On August 10, 1995, Richards submitted a gambling, three page response, with numerous irrelevant exhibits, in which she accused other members of the Bar, and members of the Committee, of having responsibility for the underlying claims of Ms. Theodore. No relevant transcript of any hearing before the District Court, nor of any order by the District Court, was presented to support Respondent's claim of *res judicata* on the *Theodore* grievance. Indeed, Respondent failed to produce a scintilla of evidence to support her claim of *res judicata*.

■ Accordingly, this Court finds that Misc. No. 88/94 is not barred by *res judicata*, or by any other equitable defense, said matter never having been litigated either in this Court or in the District Court.

Therefore, having heard and reviewed the presentations and arguments submitted by both sides, the Court adopts the findings of the Ethics and Grievance Committee enumerated in its decisions entered on September 8, 1992, September 12, 1995 and April 30, 1996, respectively.

In addition, in its Petitions for Disciplinary Action in both Misc. Nos. 22/96 and 73/96, the Committee had alleged that Respondent had misrepresented facts to this Court, and/or had committed perjury, resulting in prejudice to the administration of justice, in violation of Rule 8.4(c) and (d) of the Model Rules. However, no hearing was held by the Committee, or any Panel thereof, with respect to that charge. Rather than refer that charge back to the Committee for a hearing and findings, the Court permitted the charge to go forward and received evidence of the charge at the dispositional hearing since the charge was directly relevant to Respondent's fitness to practice law in this jurisdiction.

The record reflects that the Respondent was a defendant in *St. John Lumber Co. v. Boyd Richards*, Civil No. 367/93. A judgment had been entered against Respondent, but the plaintiff therein was unable to satisfy that judgment. Accordingly, on July 10, 1995, a judgment debtor examination was conducted before this Court pursuant to Terr. Ct. R. 52.

During the judgment debtor examination, Respondent gave the following testimony under oath:

| | |
|---|---|
| THE COURT: | So, then, the property belongs to your mother? |
| ATTY D'ANNA: | Yes, Your Honor the property belongs to her mother. |
| THE COURT: | Any other property that you own yourself? |
| RICHARDS: | No, Your Honor, it's the family property. I don't |

165

|  |  |
|---|---|
|  | know how it's going and they won't tell me. |
| THE COURT: | I'm not talking about the family property. |
| RICHARDS: | No, Your Honor. |
| THE COURT: | My question is, whether you own — |
| RICHARDS: | No, Your Honor. |
| THE COURT: | Listen to my question, I want to get my question on the record fully and clearly, and I want your answer fully and clearly on the record. The question is, do you own any real property? |
| RICHARDS: | No, Your Honor, I don't have anything. |
| THE COURT: | All right. |

Tr. at 34-35.

At the dispositional hearing, David Bornn, Esquire, a member in good standing of the V.I. Bar and a former Chairman of the Committee, testified that he had done a title search in the Office of the Recorder of Deeds, and that he had found that Parcel No. 1W(H) Estate Bethany, in St. John, was titled to, and thus owned by, Respondent at the time of the judgment debtor examination. A copy of the Deed of Gift, conveying Parcel No. 1W(H) to Respondent was admitted into evidence and it clearly shows both that the property was conveyed to Respondent and that the instrument of conveyance was recorded.

Perjury is defined, *inter alia*, as "wilfully and knowingly" testifying falsely. *See* 14 V.I. CODE ANN. SECTION 1541. In this case, the Court has no hesitancy in concluding that Respondent understood the question that was asked of her at the examination, said question being both simple and straightforward; and that she testified falsely, when she stated under oath that she owned no real

166

property. Further, the Court has no hesitancy in concluding that Respondent's false testimony was rendered wilfully and knowingly. Her obvious self-interest in denying the existence of assets at an examination of judgment debtor bolsters the Court's conclusions.

Further, by rendering said testimony, Respondent wilfully misrepresented material facts to this Court, thereby engaging in conduct involving dishonesty, fraud and deceit that was prejudicial to, and intentionally interfered with, the administration of justice.

■ Accordingly, with respect to the Committee's allegations of perjury and misrepresentation, the Court finds that Respondent committed a violation of Rule 8.4(c) and (d) of the Model Rules of Professional Conduct which prohibit an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and engaging in conduct that is prejudicial to the administration of justice.

### E. Sanctions

■ In deciding the proper sanctions to impose for lawyer misconduct, this Court is guided by the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement made applicable to this jurisdiction, pursuant to Rule 303(a) of the Territorial Court Rules.

Rule 10(A) of the ABA Model Rules of Lawyer Disciplinary Enforcement (1993) states in pertinent part:

> Misconduct shall be grounds for one or more of the following sanctions:
>
> (1) Disbarment by the court.
> (2) Suspension by the court for an appropriate fixed period of time not in excess of three years.
> (3) Probation imposed by the court not in excess of two years. . . .
> (4) Reprimand by the court or board. . . .
> (5) Admonition by disciplinary counsel. . .
> (6) . . . . restitution to persons financially injured. . .
> (7) . . . assessment of costs of the proceeding. . .

(8) Limitation by the court on the nature or extent of the respondent's future practice.

Pursuant to Rule 10(C) of the ABA Model Rules for Lawyer Disciplinary Enforcement, in imposing a sanction after the finding of lawyer misconduct, the Court will consider the following factors as enumerated in the ABA Standards for Imposing Lawyer Sanctions (1986):

(1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession;

(2) whether the lawyer acted intentionally, knowingly or negligently;

(3) the amount of the actual or potential injury caused by the lawyer misconduct; and

(4) the existence of any aggravating or mitigating factors.

Indeed, Standard 8.1 of the ABA Standards for Imposing Lawyer Sanctions provides that an attorney may be disbarred where he or she intentionally violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession, and the respondent has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

In the instant matter, Respondent knowingly violated the order of the District Court dated November 4, 1992, resulting in injury to the Respondent's clients, third persons, the legal system and the legal profession. These violations include:

1) The Respondent's intentional and knowing failure and refusal to open and/or maintain an escrow account for the deposit of client funds, and third party funds, not her own, resulting in the co-mingling of the Respondent's funds with those of Mrs. Connor and Mr. Callwood, thereby causing injury to them, to the legal system, and to the profession;

2) The Respondent's intentional and knowing, and re-

peated and consistent, pattern of failing and refusing to return funds not her own, to clients and to others who unquestionably were entitled to them, resulting in injury to Mrs. Connor and Mr. Callwood, to the legal system and to the profession; and

3) The Respondent's intentional and knowing failure and refusal to keep time records and financial records, resulting in injury to Mrs. Connor and Mr. Callwood.

The Court finds Respondent's conduct especially egregious since Respondent engaged in the same or similar conduct in 1988 and 1989, which precipitated her suspension from the practice of law. Further, this Court could find no evidence of understanding or appreciation by the Respondent of the solemnness of her obligation to maintain proper escrow accounts, and to abide by the Model Rules and the Order of the District Court. Moreover, she has failed to accept responsibility for her transgressions and has done nothing to mitigate the undesirable consequences of her conduct. Indeed, although Respondent made restitution to Mrs. Connor in the amount of Two Thousand Three Hundred Dollars ($2,300.00), said restitution was only made after a grievance had been filed against her by Judge Swan, and after Judge Swan had ordered her three (3) times, at three (3) different hearings, to do so. Moreover, no restitution ever was made to Mr. Callwood.

Furthermore, Respondent misrepresented material facts to this Court, while under oath during a judgment debtor examination on July 10, 1995, in the matter of *St. John Lumber Co. v. Boyd Richards*, Civ. No. 367/93. Indeed, Standard 5.11 of the ABA's Lawyer Sanctions provides that disbarment is appropriate when a lawyer engages in criminal conduct which includes false swearing or misrepresentation.

### III. Misc. No. 21/95: Petition for Unconditional Reinstatement after Suspension

Respondent's petition for unconditional reinstatement to the V.I. Bar, filed in Misc. No. 21/95, is the most recent petition filed in that matter. Although Misc. No. 21/95 was originally filed in the District Court of the Virgin Islands in 1989 and docketed as

1989-65, it was transferred to the Territorial Court by order of the District Court dated May 17, 1994 since the Territorial Court has sole jurisdiction over attorney disciplinary matters. *See In re Moorehead*, 27 V.I. 74 (Terr. Ct. 1992).

In this matter, the District Court of the Virgin Islands by order dated May 28, 1991, suspended Respondent from the practice of law for one year for her failure to preserve the identity of client funds and property of a client in violation of Rule 1.15(a) of the Model Rules of Professional Conduct and Disciplinary Rule 9-102 of the Model Code of Professional Responsibility.

On July 1, 1992, with the term of suspension having expired, Respondent filed her initial petition for reinstatement to the V.I. Bar in the District Court. By recommendation dated September 9, 1992, the Committee opposed the petition and recommended that Respondent's petition for reinstatement be denied. A hearing was held on said petition on October 20, 1992, where Respondent appeared pro se and Kevin D'Amour, Esquire, the then chairman of the Committee, appeared on its behalf. Having heard the evidence presented by both parties, the District Court issued an order dated November 4, 1992, which stipulated that Respondent would be readmitted on the condition that she practice law under a supervising attorney, to be approved by the Court. Specifically, after the supervising attorney has been approved by the court, the District Court ordered Respondent:

(1) to meet with the supervising attorney for a thorough review of the Model Code. This review was to especially emphasize the procedure for the proper maintenance of trust and business accounts and records;

(2) to bring all new matters to the supervising attorney for review and approval before accepting any new clients or new work;

(3) to meet with the supervising attorney (i) in person, (ii) at least once a week, (iii) at a regular time and place (iv) to discuss the status and progress of all cases.

Further, the District Court specifically provided in its Order of November 4, 1992 that upon the completion of one year of

170

supervised practice, Respondent could petition the Court "to reconsider her application for readmission . . . without supervision."

By subsequent order of the District Court dated December 10, 1992, Richards was readmitted to the practice of law under the supervision of Respondent's nominee, Stafford Hilaire, Esquire for the period of one (1) year.[3] In its Order of conditional readmission, the District Court stated that it had reviewed each provision of the supervisory arrangement as set forth in the November 4, 1992 Opinion and Order with both Respondent and Hilaire, and that it had confirmed their understanding and consent to all of the terms of said Opinion and Order.

Since that time, Respondent has been under the disciplinary jurisdiction, first of the District Court, and then of this Court. Upon the conclusion of the one (1) year term of supervision, Respondent filed a Petition for Unconditional Admission to the V.I. Bar.

Rule 303(h)(3) of the Territorial Court Rules states that:

> Petitions for reinstatement by a disbarred or suspended attorney shall be filed with the clerk of this court for referral to the presiding judge who shall thereafter assign the matter to a disinterested judge, attorney or committee for review. The judge, attorney or committee assigned to the matter shall review the petition and verify the allegations therein and may schedule a hearing at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for reinstatement to practice and that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, to the public interest. In addition, the applicant may be required to satisfactorily retake all or part of the Virgin Islands Bar Examination.

---

[3] Attorney Hilaire has since been disbarred by this Court for, *inter alia,* misappropriation of client funds. *See V.I. Bar Association v. Hilaire,* 35 V.I. 106 (Terr. Ct. 1997).

Pursuant to that rule, the Committee engaged in discovery, first interviewing, and later subpoenaing documents from, and taking the depositions of both the Respondent and her supervising attorney, Stafford Hilaire, in order to ascertain to Respondent's compliance with the terms of the District Court's Order of conditional readmission, and to establish the Respondent's qualifications for unconditional readmission to the practice of law. On August 22, 1995, the Committee filed its Notice of Opposition to Respondent's petition and on April 2, 1996 filed a cross-petition to Respondent's petition for unconditional reinstatement, recommending that the petition for reinstatement be denied and Respondent by disbarred.

The evidence adduced at the dispositional hearing before this Court revealed that Respondent failed to comply with the District Court's order of conditional admission dated November 4, 1992. Finding that Stafford Hilaire was unavailable to appear pursuant to Rule 804(a)(5) of the Federal Rules of Evidence, the Court admitted his deposition taken on August 17, 1995, which established, inter alia as follows:[4]

1. That he and Richards met on average once a week "in the beginning," but that as time went on it was not always once per week. Tr. at 19-21.

2. That he did not talk with Richards "with any specificity" about a procedure for billing time, or maintaining time records, Tr. at 46; that he saw some of Richards' billing statements to clients, but only "after the fact," and that these were shown to him for "information," and not for his approval, Tr. at 47-48; that he did not "get into the specifics" of her time records, Tr. at 51; that he did not recall how Richards kept track of her time, Tr. at 51-52; and finally, that he would be unable to assure the Court that Richards

---

[4] Hilaire's deposition testimony was admitted in this matter since he was unavailable at the time of the final hearing. The Court takes judicial notice that it had appointed a receiver to take possession of Hilaire's files due to his abandonment of his law practice and absence from the jurisdiction.

was in fact keeping accurate and detailed records in all cases in which she is involved. Tr. at 52.

3. Finally, Hilaire testified that he did not know if Richards ever established an escrow account. Tr. at 78-80.

Further, the deposition of Respondent Monica Boyd Richards taken on March 18, 1996 was admitted into evidence since Respondent failed to appear for the hearing, despite numerous notices, and was therefore unavailable. Relevant to her request for readmission, and to her compliance with the District Court's Order of November 4, 1992, Respondent testified at the deposition as follows:

1. That the real issue before the District Court had to do with her disappearance from her office, rather than her failure to place funds in an escrow account. Tr. at 26-28.

2. That she had agreed to a one year "re-cuperation"; but that she had not been suspended from the practice of law. Tr. at 29.

3. With respect to the issue of whether she currently has any escrow account(s), at first she objected on attorney-client privilege grounds. Tr. at 80. Then, Richards alternated between refusing outright to discuss the state of her escrow accounts, and obfuscating about them Tr. at 82-84. Finally, she testified that she had closed her escrow account, but that she could not remember when. Tr. at 84.

In addition, the following demand for the production of documents was attached to the Notice of Deposition and Respondent was required to produce:

Copies of all documents that establish the opening and continuous operation of any and all escrow accounts for the Respondent and/or her law offices since December 19, 1992.

173

Respondent produced no documents. This is particularly significant in view of the fact that the Court had orally granted the Committee's motion to compel Richards to appear for the deposition and to produce all documents which were responsive to the Committee's demand for production, at the hearing on March 15, 1996.

Respondent's non-responsiveness and evasiveness in responding to the Committee's questioning concerning her escrow account, and her failure to produce any documents in response to the Committee's demand for production of documents concerning her escrow account, is consistent with her behavior before the Committee and before this Court. Consistently, in all proceedings before the Committee and both courts, Respondent has taken the position, and has testified, that she had proper escrow accounts. Yet, when asked to produce documentation to support her claims, she obfuscates and fails to produce any documentation at all. Like the District Court, this Court can only conclude that Respondent failed to open and maintain an escrow account since December 1992, when she was conditionally readmitted to the practice of law by the District Court.

■ The District Court's observation that Respondent failed to comprehend the solemnness of her obligation to maintain a proper escrow account, is as true today as it was in 1991 when that Court ordered Respondent's suspension. Moreover, Respondent has not accepted responsibility for her transgressions. This Court has not seen any evidence, either in her pleadings or in her deposition testimony, that Richards has accepted any responsibility for her transgressions, or even recognized any wrongdoing on her part. To the contrary, her pleadings are marked by combativeness, obfuscation, and a constant denial of any wrongdoing. On this record, the Court has no trouble in concluding that the Respondent has not met her burden under Rule 303(h)(3) of the Territorial Court Rules, and therefore is ineligible for readmission to the V.I. Bar.

## IV. Conclusion

The Court firmly believes, and it exhorts all members of the Bar to recognize that

the attorney-client relationship is one of the highest trust and confidence, requiring an attorney's dealings with his client to be characterized by the utmost candor and fairness.

*State of Oklahoma ex rel Oklahoma Bar Assoc. v. Warzyn,* 624 P. 28 1068, 1073 (Okl. 1981). It is the responsibility of this Court to ensure that the public's trust and confidence in the Bar and the legal profession is not violated, and to that end this Court will be enforce the ABA's Model Rules of Professional Conduct.

Under the facts presented to the Court in these consolidated proceedings, it is clear that the Respondent, Monica Boyd Richards, repeatedly violated the high level of trust and confidence reposed in her by her clients, the Courts, the legal profession, and the community at large. Respondent's wholesale violation of the District Court's suspension order, failure and refusal to open and maintain a trust account, failure and refusal to refund monies to clients and others unquestionably entitled to same, failure and refusal to maintain time records or financial records, misrepresentations and perjury to this Court, and lack of any remorse or understanding of the harm which she has visited on her clients, the public, the legal profession and the administration of justice, can lead this Court to only one conclusion. Respondent must be disbarred forthwith. No other sanction or punishment — or combination of sanctions or punishments — would be effective to ensure that the Respondent, and other members of the Bar, are deterred from similar misconduct in the future. This is especially the case where, as here, Respondent has been the subject of a prior disciplinary action for the same misconduct.

Accordingly, an appropriate order denying unconditional reinstatement and an order of disbarment will be issued.

DATED October 14, 1999